IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAINT JOHN'S ORGANIC FARM, )<br>and PETER DILL, individually,    )<br>                                                )<br>             Plaintiffs,               )<br>                                                )<br>         v.                                 )<br>                                                )<br>GEM COUNTY MOSQUITO        )<br>ABATEMENT DISTRICT, a          )<br>political subunit of the State of      )<br>Idaho, and GEM COUNTY, a        )<br>political unit of the State of Idaho, )<br>                                                )<br>             Defendants.             )<br>_____ ) | Case No. CV-04-87-S-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Pending before the Court is Plaintiffs' Petition for Attorney's Fees and Costs
(Docket No. 65).  Having reviewed the record, and being otherwise fully informed,
the Court enters the following Order denying the motion.

## PROCEDURAL BACKGROUND

St. John's Organic Farm and Peter Dill (collectively "Dill") brought the

within action pursuant to the citizen suit provision of the Federal Water Pollution

Control Act (otherwise known as the "Clean Water Act" or "CWA"), 33 U.S.C.

§ 1365.  Dill alleged that Gem County Mosquito Abatement District ("GCMAD")

**Order - 1**

and Gem County (collectively "Gem County"), had violated, and would continue

to violate, § 301(a) of the Act, 33 U.S.C. § 1311(a), by discharging pollutants into

the waters of the United States in connection with its mosquito abatement program

without an NPDES permit.  *Complaint* at 2.  Dill further alleged that Gem

County's practices adversely impacted his recreational, health, aesthetic, economic,

and environmental interests and the economic and environmental interests of his

organic farm.  *Id*. at 3.

Prior to filing suit, Dill gave the requisite notice of intent to sue to the

Environmental Protection Agency (EPA), the Administrator of the Clean Water

Act, and to other entities as required by 33 U.S.C. § 1365(b)(1)(A).  After receipt

of the notice, but before this action was filed, Gem County filed an action in the

federal district court for the District of Columbia against the EPA and Dill seeking

(1) a declaratory judgment that Gem County was not required to obtain an NPDES

permit, (2) an injunction barring the EPA or Dill from asserting otherwise, or (3)

an order that the EPA process the permit application.  *See Gem County Mosquito*

*Abatement District v. Environmental Protection Agency*, 398 F. Supp. 2d 1, 3-4.

(D.D.C. 2005).  The Court dismissed the case against the EPA on the grounds that

there was no case or controversy given that Gem County and the EPA agreed that a

permit was not required when pesticides were applied in a manner consistent with

**Order - 2**

the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136
*et seq*.  *Id*. at 13.  The Court dismissed the case against Dill for improper venue.
*Id.*  Dill's motion for attorney fees was denied on the grounds that no declaratory
judgment had been entered and he had offered no authority in support of an award.
*See Declaration of Murray D. Feldman*, Exhibit B (copy of order denying
attorney's fees) (Docket No. 68-2).

      While the District of Columbia case ("D. C. case") was pending, Dill filed
the within action.  This action was stayed twice pending resolution of the D. C.
case, most recently during court-ordered mediation in the D.C. case while on
appeal.  Aside from ruling on a motion to intervene, the only activity before this
Court has been  procedural in nature.  The parties ultimately entered into a
Settlement Agreement.  Pursuant to the terms of the resulting Stipulation for
Dismissal with Prejudice (Docket No. 61), the Court entered Judgment on
September 6, 2006, incorporating the Settlement Agreement, dismissing the case
with prejudice, and reserving the issue of attorney's fees and costs.  Docket No. 63.
Dill thereafter timely filed the pending motion for attorney's fees pursuant to the
Clean Water Act.  He requests attorney's fees and expenses for both the Idaho case

**Order - 3**

and the D.C. case.[1]

## APPLICABLE LAW AND DISCUSSION

### A.    Clean Water Act

The stated purpose of the Clean Water Act (33 U.S.C. §§ 1251 to 1376) is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  To accomplish this stated purpose, the CWA prohibits the discharge of pollutants into those waters without a permit issued under the National Pollutant Discharge Elimination System (NPDES) permit program by either the EPA or an authorized state agency.[2]  *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1009 (9th Cir. 2002) (citing 33 U.S.C. §§ 1311(a), 1342).[3]  The permit program is the key to

---

[1]  Dill seeks $116,041.03 in attorney's fees and $5,371.15 in expenses in connection with the Idaho case and $27,549.05 in attorney's fees and $89.16 in expenses in connection with the D. C. case for a total sum of $149, 050.39.

[2]  For ease of reference, the Court will hereinafter refer only to the EPA and not also to "authorized state agency."

[3]  "The term 'pollutant' means dredged soil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."  33 U.S.C. § 1362(6).

In relevant part, "discharge of pollutants" includes "any addition of any pollutant to navigable waters from any point source."  33 U.S.C. § 1362(12)(A).

"The term 'point source' means any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."  33 U.S.C. § 1362(14).

Order - 4

enforcing the prohibition of any discharge that does not comply with various provisions of the CWA and seeks to limit the discharge of pollutants by imposing numerical restrictions.  *Southeast Alaska Conservation Council v. United States Army Corps of Engineers*, 486 F.3d 638, 645-46 (9th Cir. 2007).  *See also Hammersley*, 299 F.3d at 1009 (the "cornerstone" of the CWA is that discharge of a pollutant from a point source is unlawful absent a NPDES permit).

Section 1365 of the CWA provides that any citizen may commence a civil action against any person alleged to be in violation of the CWA or an order issued by the EPA or against the EPA for failure to perform any non-discretionary act or duty under the CWA.  33 U.S.C. § 1365(a).  As long as a citizen complies with the statutory prerequisites to bringing an action, the district court has jurisdiction to decide whether a permit is required for a discharge even if the EPA has determined otherwise.  *Hammersley*, 299 F.3d at 1012.  However, the EPA's determination that a permit is not needed  "warrants consideration" by the district court.  *Id.*

Here, Dill complied with the statutory prerequisites to bringing a citizen suit under the CWA.  Therefore, the Court would have had jurisdiction to determine whether or not Gem County was in fact violating the CWA even though the EPA had determined that it was not.  However, the Court obviously did not need to reach that issue.

**Order - 5**

**B.     Attorney Fees**

The CWA provides that in any citizen suit brought pursuant to its provisions, the Court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."  33 U.S.C. § 1365(d).

Dill requests attorney fees on two grounds.  First, in reliance on *Idaho Conservation League, Inc. v. Russell*, 946 F.2d 717, 719 (9th Cir. 1991), Dill contends that a party who prevails through settlement is entitled to attorney's fees and expenses if (1) he obtained the relief sought as a result of bringing the action, and (2) there was a legal basis for his claim.  This is essentially a statement of the catalyst theory discussed below.  Second, he contends that he is entitled to attorney's fees because he brought the case pursuant to the CWA, and the Settlement Agreement restricting pesticide application contains all of the essential elements of a consent decree.  Although Dill appears to have abandoned the catalyst theory basis of recovery in favor of the judicially enforceable agreement theory, he claims that the catalyst theory is still viable in the context of the CWA and is further support for an award of attorney's fees. *Reply* at 3 (Docket No. 69). In any event, the Court must first determine whether that settlement rendered Dill

either a prevailing or substantially prevailing party.  If it did, then the Court must determine whether an award is appropriate.

### 1.    Prevailing Party

Several federal fee-shifting statutes provide for an award of attorney's fees to a prevailing party and a few provide for such an award to a substantially prevailing party.  The Supreme Court fairly recently examined what constitutes a "prevailing party" where a plaintiff settles rather than proceeding to a determination on the merits.  The Court determined that a party who settles their claims may be a prevailing party if the settlement requires "a material alteration of the legal relationship of the parties."  *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 604 (2001) (construing the attorney's fees provisions in the Federal Housing Amendments Act ("FHAA") and the Americans With Disabilities Act ("ADA")). *See also Richard S. v. Dep't of Developmental Services* 317 F.3d 1080, 1086 (9th Cir. 2003); *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002).  An enforceable judgment on the merits, a court-ordered consent decree, or some other "judicial imprimatur" satisfies this requirement. *Buckhannon*, 532 U.S. at 604.  In the absence of any type of judicial imprimatur, the catalyst theory cannot form the basis for an award of attorney's fees under the

**Order - 7**

prevailing party language of the FHAA and ADA because there is no "judicially sanctioned change in the relationship of the parties."[4]  *Id.* at 604.

The Ninth Circuit has held that *Buckhannon*'s preclusion of the use of the catalyst theory under the FHAA and ADA applies to other "prevailing party"  fee-shifting statutes as well.  *See, e.g., Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002) (applying *Buckhannon* to the EAJA observing that *Buckhannon* "sweeps more broadly" than the FHAA and ADA); *Bennett v. Yoshina*, 259 F.3d 1097, 1100-01 (9th Cir. 2001) (observing that "[t]here can be no doubt that the Court's analysis in *Buckhannon* applies to statutes other than the two at issue in that case" and applying *Buckhannon* to the Civil Rights Attorney's Fees Awards Act of 1976).  The Court is not aware of any Ninth Circuit case in which *Buckhannon* was not applied to a prevailing party fee-shifting statute.[5]

The Ninth Circuit has also applied *Buckhannon* to statutes that provide for an award to a "prevailing or substantially prevailing party," albeit without much discussion, even though the statutes addressed in *Buckhannon* referred to only a

---

[4]  The catalyst theory confers prevailing party status on a plaintiff who achieves a desired result when the litigation causes a voluntary change in a defendant's conduct.  *Buckhannon*, 532 U.S. at 601.

[5]  The catalyst theory is still available under federal fee-shifting statutes that do not contain "prevailing party" language but rather allow an award whenever the court deems it appropriate.  *See, e.g., Ass'n of Calif. Water Agencies v. Evans*, 386 F.3d 879, 885 (9th Cir. 2004) (addressing the attorney's fee provision in the Endangered Species Act).

**Order - 8**

"prevailing party."   *See Kasza v. Whitman*, 325 F.3d 1178, 1180 (9th Cir. 2003) (applying *Buckhannon* to the language in the Resource Conservation and Recovery Act ("RCRA") which is nearly identical to the language in the CWA attorney's fee provision).[6]   In addition to RCRA, the Ninth Circuit has applied *Buckhannon* to other statutes containing "substantially prevailing" language.  *See, e.g.*, *Synagogue v. United States*, 482 F.3d 1058, 1063 (9th Cir. 2007) (Civil Asset Forfeiture Reform Act of 2000).  The Eighth Circuit, also without much discussion, applied *Buckhannon* to the attorney's fee provision of the Clean Water Act.  *Sierra Club v. City of Little Rock*, 351 F.3d 840, 84 (8th Cir. 2003).

Although the Court is aware that there is some disagreement among commentators as to whether *Buckhannon* applies to statutes containing the "substantially prevailing" terminology, it appears that some courts have applied *Buckhannon* to those statutes.  *See, e.g.*, *Union of Needletrades, Indus. and Textile Employees, AFL-CIO v. United States I.N.S.*, 336 F.3d 200 (2nd Cir. 2003) (citing

---

[6] Dill argues in his Reply brief that the Ninth Circuit did not specifically hold that *Buckhannon* applies to the RCRA.  *Reply* at 4 (Docket No. 69).  The Court disagrees.  The Ninth Circuit specifically cited *Buckhannon*'s rejection of the catalyst theory and then proceeded to hold that the plaintiff was not otherwise a prevailing party because she did not gain by judgment or consent decree a material alteration of the legal relationship of the parties.  *Kasza*, 325 F.3d at 1180.  He also argues that based on *EPA v. Sierra Club*, 322 F.3d 718, 721-26 (D.C.Cir. 2003), the catalyst theory is still applicable to the Clean Air Act as well as to the Clean Water Act.  However, the discussion cited by Dill from that case refers to the pre-1987 version of the Clean Water Act attorney's fee provision that did not include "prevailing party" language.

**Order - 9**

*Kasza* among other cases and finding that terms "prevailing party" and "substantially prevails" are fundamentally the same and that *Buckhannon* applies); *Oil, Chemical & Atomic Workers International Union, AFL-CIO v. Department of Energy*, 288 F.3d 452 (D.C.Cir.2002) (concluding that the "substantially prevail" language of the Freedom of Information Act is the "functional equivalent" of the "prevailing party" language in the statutes addressed in *Buckhannon*).

Based on the above, the Court finds that the Ninth Circuit would likely extend the *Buckhannon* prohibition against the catalyst theory to the CWA as well.[7] Therefore, Dill's contention that he obtained the relief he sought as a result of bringing the action is not enough.  Rather, the Court must determine whether Dill otherwise qualifies as a prevailing party based on a material alteration in the relationship of the parties through a judicially enforceable agreement.

## 2.    Settlement Agreement

The Settlement Agreement imposes obligations not only on Gem County but also on Dill.  In summary, Gem County is obligated to (1) make a concerted effort

---

[7]  Indeed, in other jurisdictions, it is "an open question" whether the catalyst theory is applicable to environmental statutes such as the CWA since the *Buckhannon* decision.  *See Ailor v. City of Maynardville, Tennessee*, 368 F.3d 587, 601 n.6. (6th Cir. 2004) (citing *The Future of Environmental Citizen Suits After Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 8 Envtl.Law. 589, 614 (2002)).  *See also Attorney's Fees and The Clean Water Act after Buckhannon*, 9 Hastings W.-N.W. J.Envtl. L. & Pol'y 109 (2003).

over a 5-year period to substantially reduce its use of adulticides by attempting to

meet non-binding yearly targets for reduced use; (2) engage in aerial spraying only

in the event of a declared health emergency and then taking steps to minimize

spraying; (3) not allow truck fogging devices within a certain distance of the river,

the wildlife management area, Dill's land, or any irrigation canal; (4) conduct

surveillance monitoring and upgrade surveillance activities for presence of

mosquitoes and apply prudent mosquito threshhold standards before conducting

fogging activities; (5) upgrade surveillance activities; (6) contribute funds annually

to Gem Soil and Water Conservation District to assist with goal of reducing

drainage problems; (7) participate in state emergency planning committee

regarding West Nile Virus; (8) continue to work with landowners to eliminate

mosquito habitat; (9) apply reasonable standards, take reasonable steps, and

consider all relevant factors when complying with requests from property owners

that their property not be sprayed. *Settlement Agreement*, ¶¶ 12-23.

The Settlement Agreement also contains a provision detailing certain

obligations to Dill that are to continue beyond the 5-year life of the agreement and

were characterized as "contractual and personal to [Dill]" and are not to run with

the land. *Settlement Agreement*, ¶ 24.

Finally, the Settlement Agreement requires Dill to (1) release all claims of

**Order - 11**

CWA violations and dismiss the case with prejudice; (2) work with Gem County

under ¶ 24 to notify Dill's neighbors of the provisions of the Agreement and the

mosquito control methods to be used in the buffer areas around his land; (3)

introduce additional insect-mosquito-predators on his land for the next four years;

(4) covenant not to sue under the CWA as long as Gem County is in compliance

with the agreement. *Settlement Agreement*, ¶¶ 6, 25-27.

### a.   Judicial Enforceability

Dill contends, and Gem County does not appear to dispute, that the

Settlement Agreement (Docket No. 61-2) is a judicially enforceable agreement.

The Court agrees.  The Settlement Agreement specifically provides that the "Court

should retain express jurisdiction over the compromise and settlement and

incorporate the terms of this Agreement by reference in the order of dismissal for

purposes of enforcing the Agreement until such time as the Agreement has been

terminated . . . ." *Settlement Agreement*, ¶ 7 (Docket No. 61-2).  The Settlement

Agreement was subsequently incorporated into the Stipulation of Dismissal with

Prejudice (Docket No. 61) which, in turn, specifically provided that the Court was

to retain jurisdiction both to enforce the agreement and to address attorney fees and

costs. *Stipulation of Dismissal with Prejudice*, ¶¶ 3 and 4 (Docket No. 61).  The

Court then entered an order dismissing the action and expressly referencing

retention of the jurisdiction as stated in the Stipulation for Dismissal.  *Order of Dismissal with Prejudice* (Docket No. 62).

### b.    Material Alteration in Relationship of the Parties

Gem County disputes that the Settlement Agreement constituted a material alteration in the relationship of the parties.   Gem County contends, supported by affidavits, depositions, and exhibits, that several of the practices required by the Settlement Agreement were in place prior to the filing of the Complaint.  In his Reply, Dill, using the same documents and providing additional documents and affidavits, contends that many were not in place until after the Complaint was filed but that in any event, they were voluntary and now they are mandatory.  Resolution of those issues would be tantamount to engaging in a second litigation which the Supreme Court has instructed the district court need not do.  *Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)*.

In any event, the Court need not resolve this dispute.  The Court recognizes that the Settlement Agreement rendered Gem County's practices –  whether they were already in effect or proposed –  mandatory rather than voluntary.  However, the Court does not find that determinative because even if they were not previously in effect, they are not related to the relief sought in the Complaint.

### 3.    Actual Relief on the Merits

Order - 13

To be considered a prevailing party, a plaintiff must receive "at least some relief on the merits of his claim." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (quoting *Hewitt v. Helms*, 482 755, 760 (1987)). *See also Richard S.*, 317 F.3d at 1087 (agreeing that district court conducted the proper inquiry by examining whether plaintiffs obtained "some relief on the merits" in the settlement); *Barrios,* 277 F.3d at 1134. While *Richard S.* and *Barrios* focus on whether there was a material alteration in the relationship of the parties through a judicially enforceable agreement, they repeat the language of *Farrar* and *Fischer* regarding "actual relief on the merits" which is often overlooked in cases discussing those issues:

> Under the test articulated in *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), "a plaintiff 'prevails' when *actual relief on the merits* of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." The Court explained that "a material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Id.* at 113, 113 S.Ct. 566. In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do. *See id.*

*Fischer v. SJB-P.D., Inc.*, 214 F. 3d 1115, 1118 (9th Cir. 2000) (emphasis added).

Read together, it appears that the judicially enforceable agreement must

**Order - 14**

relate to relief sought in the complaint.  *See, e.g.*, *Richard S.*, 317 F.3d at 1087

(agreement that defendants give notice prior to transfer was related to plaintiff's

complaint challenging transfers of disabled adults to a less desirable institution);

*Barrios*, 277 F.3d at 1134 (wheelchair-bound plaintiff settled for the same type of

relief he sought in his complaint which was monetary and the right to coach from

the field).  Furthermore, "[t]he touchstone of the prevailing party inquiry must be

the material alteration of the legal relationship of the parties *in a manner which*

*Congress sought to promote in the fee statute*."  *Tex. State Teacher's Ass'n*, 489

U.S. at 792-93 (emphasis added).

Dill readily admits that the results set forth in the Settlement Agreement

could not have been achieved by Court order:

> All this Court likely could have done is to require the
> GCMAD to obtain an NPDES permit before continuing
> to apply mosquito adulticides to waterways within the
> district . . . .  There is by no means any guarantee that
> these results could have been obtained through the
> administrative permit process . . . .  [I]t is irrefutable that
> Peter Dill obtained the relief he sought, and in fact, more
> than he could have hoped to achieve through a court
> decision requiring that an NPDES permit be obtained.  If
> plaintiffs had gone to trial, the only relief that could have
> been *sought* was a declaration that defendants' conduct
> was unlawful, an injunction prohibiting further
> discharges until an NPDES permit was obtained and
> some nominal civil penalties.

*Mem. Supp. Pet. for Fees* at 9-10 (emphasis in original).

**Order - 15**

In addition, Gem County's opposing brief contains a useful table comparing the requested relief – relief that could have been granted under the CWA if Dill had prevailed on the merits – to the results obtained. *Joint Brief Opposing Attorney Fees* at 5:

1.   **Relief Requested:** Declaratory Judgment that Gem County has and continues to violate the CWA.

     **Result Obtained:** Dismissal with prejudice of Dill's Complaint. Dill covenants not to sue for CWA violations (both past and future) for duration of settlement term (¶¶ 6, 26).

2.   **Relief Requested**: Enjoin Gem County from applying pollutants in the Payette River, its tributaries, and all other surface waters; enjoin Gem County from discharging without permit.

     **Result Obtained**: No permit required; Gem County may apply non-adulticide controls as it wishes so long as it complies with FIFRA label requirements; continue adulticide fogging buffers for limited set of waters of U.S. at levels set by GCMAD prior to litigation (¶¶ 14, 24).

3.   **Relief Requested:** Allow Dill two annual mosquito abatement seasons after permit issuance to sample Payette River watershed pesticide discharges at Gem County's expense.

     **Result Obtained:** No permit required; no sampling required, no costs borne by Gem County.

4.   **Relief Requested:** Order Gem County for two years after

permit receipt to provide Dill with all reports and documents that Gem County submits to EPA or DEQ re: discharges or reports.

**Result Obtained:** No permit required; no reporting obligations.

5.   **Relief Requested:** Enjoin Gem County to pay restoration cost for water degradation caused by CWA violations.

**Result Obtained:** No CWA violations; no restoration requirement; no water quality degradation.

6.   **Relief Requested:** Civil penalties of $27,500 per day for CWA violations within 5 years and 60 days of Feb. 19, 2004 (filing date of Complaint) and subsequent to filing.

**Result Obtained:** No civil penalties; Dill grants Gem County covenant not to sue (¶ 26).

7   **Relief Requested:** Have Ninth Circuit *Headwaters* and *Forsgren* decisions implemented in this Court (*see* Feldman Decl. Ex. A at p. 27, LL. 11-19).

**Result Obtained:** No permit requirement and no application of *Headwaters* or *Forsgren*.[8]

Both Dill's statement and the chart amply demonstrate that the relief he

obtained was not the relief he sought in the Complaint.  The Settlement Agreement

---

[8] In *Headwaters, Inc. v. Talent Irrigation District*, 243 F.3d 526 (9th Cir. 2001), the Ninth Circuit held that an herbicide applied to irrigation canals under the facts of that case was a pollutant, the application of which required an NPDES permit despite compliance with FIFRA.

In *League of Wilderness Defenders v. Forsgren*, 309 F.3d 1181 (9th Cir. 2002), the Ninth Circuit held that aerial application of a pesticide constituted a point source discharge, apparently assuming without deciding that the pesticides as applied were pollutants.

Order - 17

may have advanced Dill's goals of reducing the use of pesticides affecting his property.  However, the legal relationship of the parties was not materially altered by that Settlement Agreement in the manner promoted in the CWA.

Significantly, Gem County did, in fact, try through the D. C. litigation to obtain the permit Dill's Complaint sought to have them obtain.  EPA's refusal to issue a permit was based on its position, as evidenced in its "Interim Statement and Guidance on Application of Pesticides to Waters of the United States in Compliance with FIFRA" issued in July of 2003, that pesticides applied in compliance with FIFRA regulations are not pollutants. Gem County, 398 F. Supp. 2d at 5.  Dill has not alleged that they did not so comply.

On appeal, the D.C. Circuit encouraged the parties to work out a solution which they eventually did.  However, in doing so, "Dill abandoned the Clean Water Act ('CWA') legal framework and permit requirements he sought to impose on [Gem County]."  *Joint Brief Opposing Attorney Fees* at 2. (Docket No. 68). Rather than press forward to get a determination of whether pesticides applied in the manner consistent with FIFRI regulations required a permit, Dill instead negotiated a private settlement with Gem County, one that is not enforceable by anyone other than him.  If the litigation had been carried through to conclusion, the Court would have either (1) determined that no permit was required, or (2) that a

**Order - 18**

permit was required and enjoined Gem County from pesticide application until it received a permit from the EPA.  In the latter case, Gem County would have had to litigate the issue with the EPA.

Not only was it the EPA's position that a permit was not required when pesticides are applied in compliance with FIFRA, it promulgated the Interim Statement, sought public comment, published an Interpretative Statement incorporating that comment, and ultimately recently promulgated a final regulation excepting from the permit requirement pesticides applied pursuant to FIFRA.  *See* 40 CFR 122.3(h) (effective January 2007) (Docket No. 70-2).[9]

As stated above, the EPA's determination that a permit is not needed "warrants consideration" by the district court.  *Hammersley*, 299 F.3d at 1012. Even more deference should be accorded a final regulation.  *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 845-46 (1984) ("considerable weight" should be accorded to EPA's construction of statutory scheme it is entrusted to administer where it has issued regulation representing a reasonable accommodation of conflicting policies).  EPA's actions lend further credence to Gem County's argument that Dill did not prevail under the CWA.

---

[9]  As the Court noted in the D.C. case, the EPA had not issued a permit ever in 30 years for applications of pesticides.  *Gem County*, 398 F. Supp. 2d at 5.

**Order - 19**

### 4.    Whenever Appropriate

Even if the Court were to find that Dill is a prevailing or substantially prevailing party, it is not required to award attorney fees.  Rather, an award of attorney fees under the CWA is discretionary and may be awarded "whenever appropriate."  The Court finds that an award is not appropriate given that Gem County was operating under and within EPA policy and yet voluntarily went to great lengths prior to the Settlement Agreement to attempt to address Dill's concerns and to get a judicial resolution of the issue of whether a permit was required under the CWA.  Indeed, Gem County was between the proverbial rock and a hard place having to defend the EPA's policy of not requiring a permit.  The Court finds this different from a situation in which a defendant was clearly required to have a permit but did not or where a defendant had a permit but was failing to comply with the permit.

The Court also finds that an award of attorney's fees is not appropriate because Gem County prevailed to a large extent as well.  They not only were not enjoined from applying pesticides without a permit, they do not have to litigate the issue of whether the EPA's position is correct, and they are only bound by the settlement agreement for five years except with respect to Dill's land.  Furthermore, Dill became obligated to take several steps to control mosquitoes and

**Order - 20**

their habitat on his land. That, together with his agreeing to dismiss the claim regarding the permit with prejudice offsets, at least in part, any relief he may have attained in the Settlement Agreement.

## CONCLUSION

Dill is not a prevailing party under the Clean Water Act, and therefore, not entitled to an award of attorney's fees and costs.  Even if Dill were a prevailing party, the Court finds that an award of attorney's fees and costs is not appropriate on the facts of this case.  Given the Court's finding, it is not necessary to reach the issue of whether Dill is entitled to attorney's fees for defending the D.C. case.[10]

---

[10] The Court recognizes that the D.C. Circuit denied his motion for attorney's fees, and the Court concurs with that decision in that case.  However, the Court also recognizes that there is some authority for the position that fees are recoverable by a prevailing party for necessary, related litigation and that possibly Dill could have successfully recovered those fees had this Court determined he was a prevailing party in this litigation.

**Order - 21**

## ORDER

NOW THEREFORE, IT IS HEREBY ORDERED that Plaintiff's Petition

for Attorney's Fees and Costs (Docket No. 65) is DENIED.



DATED:  **August 27, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Order - 22**